[S. F. No. 5355. In Bank.—September 14, 1911.]'

## W. H. SHAW, Respondent, v. S. B. SHAW, Appellant.

SALE OF TIMBER LAND—COMMON OWNERSHIP—PRINCIPAL AND AGENT—SALE BY AGENT—PROFIT CONCEALED—SETTLEMENT FOR LESS PRICE—ACTION FOR RESIDUE.—Upon a sale of timber land, where one of two common owners acted as agent for the other in effecting the sale, and concealed from him the price actually received, and settled with him for a less price, at which the land had been formerly estimated, the principal, upon discovery of a much greater price actually received by his agent, is entitled to recover from the agent his full share of the price received.

ID.—ACTUAL VALUE OF TIMBER ON COMMON LAND NOT CONTROLLING—BONDING OF OTHER LAND TO ENHANCE PRICE—NATURE OF SALE.—Though the actual value of timber on the common land was much less than the value of other land bonded with it to enhance the price, yet where the evidence shows abundantly that the land was not sold for the number of feet of timber on each tract, but was purchased at the rate of sixty dollars per acre, if the whole land bonded averaged that price, and the agent actually received sixty dollars per acre for the common land, and settled with his principal at twenty-five dollars per acre, the fact that that was a fair price for the land, if sold separately, cannot exonerate the agent from liability to his principal for his share of the residue.

ID.—SUPPORT OF VERDICT.—It is held that the evidence clearly supports the verdict in favor of the principal for the residue of the price received by his agent, for the principal's share of the proceeds of

sale, of the land held in common, which share of the land was sold by the other common owner as his agent.

ID.—REQUESTED INSTRUCTIONS PROPERLY REFUSED—INAPPLICABILITY—PROVINCE OF JURY.—Requested instructions to the effect that the nature of the sale was according to the amount of standing timber in each tract, were properly refused, as inapplicable to the evidence, and as taking from the jury the evidence which was clearly to the contrary.

ID.—VERDICT OF JURY UPON SPECIAL ISSUES—WAIVER OF UNCERTAINTY NOT OBJECTED TO.—Objections to the uncertainty of the verdict of the jury in response to the special issues, should have been made, and, if tenable, remedied, upon request at the time the answers were returned into court that the jury be required to render more definite and specific responses, and upon failure to do so, the defeated party cannot complain of them upon appeal.

ID.—APPEAL FROM ORDER DENYING NEW TRIAL—DEFECTS IN COMPLAINT AND VARIANCE IN FINDINGS NOT REVIEWABLE.—Where the appeal is only from the order denying a new trial, asserted defects in the complaint, and the objection that the findings contradict or are at variance with the pleadings, are not reviewable, and cannot be considered.

APPEAL from an order of the Superior Court of Humboldt County denying a new trial. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

H. L. Ford, L. M. Burnell, and T. J. Crowley, for Appellant.

Denver Sevier, for Respondent.

HENSHAW, J.—Plaintiff and defendant are brothers. They owned in common two hundred acres of timber land in Humboldt County. The value of such timber land was estimated (provided the timber was sufficient in quantity to justify cutting) at a dollar per thousand standing feet per acre. Thus, an acre of land containing one hundred thousand standing feet of timber was estimated to be worth one hundred dollars. The brothers desired to sell their two hundred acres and they had their land "cruised," that is to say, the amount of timber upon it approximately estimated, and were disappointed to find that it averaged only about twenty thousand feet per acre, which would mean a valuation of twenty dollars an acre or four thousand dollars for the tract. They desired to obtain more than this, as much as possible, of course. The

defendant conceived the idea of gathering in by purchase or under bond as large a tract of better timber land as was possible and of making a sale of the whole, including the two hundred acres. He proceeded to do this at his own cost and expense, buying eighty acres and bonding other lands until in the aggregate he controlled approximately fifteen hundred acres which he then offered for sale. The intending purchasers were willing to buy the land, provided the land averaged sixty thousand standing feet per acre. That it would so average defendant felt well assured. A bond was given to the intending purchasers whereby the purchasers agreed to buy the land at the price of sixty dollars an acre if they satisfied themselves that it would average sixty thousand standing feet of lumber per acre. A brief time was given to them to have the land "cruised." They satisfied themselves of its value and the purchase was completed. After the bond was given and before the purchase was actually made defendant wrote to his brother and without advising him of the condition of affairs or the price which he expected to obtain asked him for what sum he would sell his interest in the two hundred acres, and enclosed a deed for the plaintiff to execute. Plaintiff did execute the deed for a consideration of twenty-five dollars an acre and wrote to his brother saying that he knew that "we had agreed between ourselves not to take less than $25 an acre." He also agreed to allow his brother a two hundred-dollar commission for effecting the sale. The sale was made. The defendant accounted to his brother for the twenty-five hundred dollars, deducting a commission of two hundred dollars. Subsequently plaintiff learned that all the land had sold at the rate of sixty dollars per acre and brought this action to recover the sum which he claimed to be due him in accordance with the terms of the sale. The cause was tried before a jury. Its verdict and the judgment following were given for the plaintiff. Defendant moved for a new trial and from the order denying his motion, though not from the judgment, he appeals.

Defendant's contention is that the two hundred acres were worth no more than twenty dollars an acre, that this land could not be sold even for that without adding to it other and more valuable timber land; that to accomplish this sale he had spent his time and money; that the land was, while sold nominally for sixty dollars an acre for the whole tract, actually sold per

acre according to the value of the timber standing upon it; that when the plaintiff made the conveyance of his interest in the two hundred acres for twenty-five dollars an acre the price was actually more than the land was worth, and that he, defendant, took the deed either as a purchase which he had the right to make since he was paying more than the land was worth (in this matter the defendant's own testimony is inconsistent with itself) or took the deed not as a purchaser of his brother's interest but in effect as a bond upon the property the better to enable him to sell it; that when he sold it he was in equity accountable to his brother for only the timber value, —namely, twenty dollars an acre and that, consequently, under the terms of the sale actually made he had overpaid and not underpaid his brother in their settlement. The contention of the plaintiff upon the other hand is that his brother acted for him as his agent in the sale of his land (and this is conceded by the stipulation of the parties); that the distinct understanding was that while they would be willing to sell their two hundred acres for twenty-five dollars an acre and not less, they, of course, desired to get as much more for it as possible; that the defendant agreed to undertake the sale, to gather in other tracts of timber land and to sell the whole, including the two hundred acres, for such price per acre as could be obtained; that the very purpose of this arrangement was to increase the price obtainable for the two hundred acres; that the land was actually sold for sixty dollars per acre; that this sixty dollars per acre represented the selling price of the two hundred acres as well as of every other acre in the combined tract; that it was their express agreement that he should be paid such sum per acre as the land sold for; that his brother by concealment induced him to give the deed at twenty-five dollars per acre knowing the land was to be sold for sixty dollars an acre and after the sale continued to conceal the selling price from him until from outside sources he discovered what it was.

The evidence leaves little doubt but that for timber the two hundred acres was not worth more than twenty dollars per acre, but this is not a controlling consideration. The controlling considerations are two. 1. What was the relationship between the plaintiff and defendant in regard to the land which they owned in common, and 2. What were the terms of the

sale which defendant actually made. The first consideration is completely answered by the stipulation of the parties solemnly entered into upon the trial of the cause to the following effect: "It is admitted that the defendant was the agent of the plaintiff for the sale of the plaintiff's land." This relationship, of course, as matter of law, bound the defendant to the utmost good faith in his dealings with his principal. But besides the obligation of the law, the testimony of the plaintiff and of his witnesses was that the defendant had agreed that plaintiff should have his full share of all the two hundred acres sold for; that in the selling of the whole tract "all would go in at the same price by the acre"; that he, plaintiff, was to have the same price per acre that defendant received. "I was to have for my land just the same as the land sold for." To other witnesses the defendant is represented as saying that "when plaintiff's land went into the tract plaintiff would get his share per acre for which it was sold." It is undoubted that defendant kept plaintiff in ignorance of the price when he secured from him his deed to the land at twenty-five dollars per acre. In his testimony he treats this transaction with his brother as a direct purchase by him of all his brother's rights, saying that he had made him an offer and that "when the deed was signed by him of course I bought it"; that at the time he was satisfied that his sale was "going to go" and that he "took it" (his brother's land) and "took a chance as to whether the sale was going to go through"; in the next breath he apparently denies that he made any offer for the land and seemingly wishes to convey the idea that the deed is to be treated merely as a bond authorizing him to sell. This latter seems to be the view adopted by the attorneys for the defendant, from the following language of their brief which in contemplation of the evidence already quoted is at least singular; "It was admitted that defendant was the agent of the plaintiff but there is no evidence that he purchased the property or even claimed that he had done so." It must be concluded, therefore, upon this proposition that the admission of defendant and the evidence in the case abundantly support the proposition that fiduciary relations existed between the parties and by virtue of those fiduciary relations the defendant could not make any profit out of the sale of his principal's land by any transaction unknown to and un-

approved by the principal himself. So axiomatic is this proposition that, of course, it does not require the citation of authority.

The second consideration turns upon the true nature of the sale which defendant actually effected, and here, at the outset, it should be said that if defendant charged with the duty of an agent can show that by the transaction he, himself, did not make any profit out of the sale of plaintiff's land, then since the sale even at twenty-five dollars an acre was a fair price defendant is exonerated and plaintiff cannot recover. But upon this plaintiff's evidence established abundantly that the land was not sold for one dollar for every thousand standing feet of timber per acre, but that the transaction actually was this: the purchasers were buying the land at the rate of sixty dollars per acre if upon inspection they became satisfied that it averaged at least sixty thousand standing feet of timber per acre. There was no contract that if it averaged eighty thousand feet of timber per acre that the price should be eighty dollars per acre. There was no contract whereby the parcels were to be segregated and valuations put upon them according to the amount of timber found thereon. For aught that appears the land may have averaged one hundred and fifty thousand feet of timber per acre, but the price was still sixty dollars per acre to be paid after the intending purchasers had satisfied themselves of the amount of timber growing on the whole tract. Thus, one of the purchasers, Palmtag, testified that they bought the tract from the defendant Shaw and being asked what he paid for it replied "$60 an acre. Q. Was there any distinction as to any particular land selling for less or did it all go at the rate of $60?" A. It all went at $60 an acre." Lancaster, another of the purchasers, corroborates Palmtag, and in answer to questions from the court, said that the bond for the deed specified on its face that the land was to be sold at the rate of sixty dollars an acre and the deed followed the bond. Even the defendant testifying that the two hundred acres was included in the sale and being asked as to the land "if it all sold for $60 an acre" answered "it sold if it averaged 60,000 feet to the acre." And, indeed, the very purpose of defendant's endeavors in securing the large tract for sale and including the two hundred acres therein was to obtain for the two hundred

acres an enhanced price, a price so enhanced by the greater value of the surrounding lands. And here we may consider a proposition which appellant's counsel designate as one of controlling influence in the case. They state that the test of the transaction is: What sum would plaintiff be entitled to if the action were between him and the other owners of the land for an apportionment of the proceeds of the sale, and they proceed to argue that if all the landowners had sold they would apportion the proceeds according to the timber respectively on each seller's land. This might be true if a group of landowners were to put their lands together and so agree upon the sale, but it does not at all follow that this affords the measure of plaintiff's rights against his agent. If, in fact, such was defendant's agreement with the other sellers of land and if he was by his contracts with them obliged to account to them on the sale in proportion to the timber growing on their lands, the evidence would have weight, not as controlling the relationship between plaintiff and defendant but as showing what, in fact, the lands actually sold for, for that, of course furnishes the basis of the accounting between the principal and the agent. But the defendant does not pretend to offer evidence that he was so called upon to distribute the proceeds of the sale or that the lands of the others were paid for at any other rate than sixty dollars an acre regardless of the amount of timber on them or even that for his own one hundred acres of the undivided two hundred acres he did not receive the full sixty dollars per acre. If he did receive the full sixty dollars an acre for his one hundred acres, the plaintiff was entitled by virtue of the relationship between them to sixty dollars for his one hundred acres of the same undivided tract.

The evidence, therefore, clearly supports the verdict of the jury in this regard.

Complaint is made of certain instructions given and of the refusal to give others. The complaint is not addressed to any error of law embraced in the instructions given but rests upon the declaration that they were inappropriate to the case. The foundation of the complaint is expressed in the brief of appellant's counsel that it was wrong to give instructions as to the right of the defendant to purchase his principal's lands, and his duties and responsibilities in the event that he

did so purchase; and again the declaration is repeated that "there was no evidence whatever even tending to show a purchase of the property by the defendant. The matter was absolutely outside the case and was not and could not have been in any manner an issue in the case." We think what has already been said is sufficient to dispose of this contention. Indeed, under the evidence it would have been error for the court to have refused to give the proposed instructions upon this very subject. In like manner it is said as to many of the instructions touching the duties of an agent to his principal unimpeachable in themselves that "they are all on matters which are not in issue in the case, matters upon which there is no evidence." The statement of the evidence above given demonstrates the unsoundness of this declaration. The instructions which the court refused were based upon the contention which we have here declared to be untenable, that the sale of the land was in accordance with the amount of standing timber per acre. These refused instructions did not even leave that question open to the jury but were declarations to the effect that such in fact was the nature of the sale and that, therefore, plaintiff was entitled only to the "proportionate part of the average price which his land bore to the average quality of the land in the tract," with much more to the same effect. The instructions were properly refused.

The other asserted errors in their varying forms are addressed to different phases of these same contentions. The objections which defendant makes to the answers given by the jury to special issues submitted by the court should have been remedied by him by a request at the time the answers were returned into court that the jury be required to render more definite and specific responses. He cannot here complain of them. (*Huss* v. *Chicago G. W. Ry. Co.*, 113 Iowa 343, [85 N. W. 627]; Clementson on Special Verdicts, p. 106.)

This appeal being only from the order denying a new trial the asserted defects in the complaint and the objection that the findings contradict or are at variance with the pleadings cannot here be considered. (*Schroeder* v. *Pissis*, 128 Cal. 212, [60 Pac. 758]; *Moore* v. *Douglass*, 132 Cal. 400, [64 Pac. 705].)

For these resasons the order appealed from is affirmed.

Angellotti. J., Shaw, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.